

MICHELLE M. HARNER
U.S. BANKRUPTCY JUDGE

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MARYLAND
### at Baltimore

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Khalid Javed, | * | Case No. 17-20067-MMH |
| | * | |
| Debtor. | * | Chapter 7 |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Creditors' distributions in bankruptcy cases are governed by the priority scheme codified in the U.S. Bankruptcy Code.[1] That scheme is designed to ensure fair and equitable distributions to similarly-situated creditors. Consequently, courts generally are reluctant to deviate from the statutory priority scheme, absent clear guidance from Congress that the requested deviation is appropriate. One such statutory directive is found in section 503 of the Code, which permits courts to allow the payment of certain kinds of postpetition claims, commonly referred to as administrative expenses, ahead of other creditors. 11 U.S.C. § 503.[2]

College Park Den, Inc. ("CPD"), a general unsecured creditor in this case, seeks such an administrative expense claim. Specifically, CPD filed a motion requesting, among other things,

---

[1] 11 U.S.C. §§ 101 et seq. (the "Code").
[2] *See also* 11 U.S.C. §§ 507, 726.

an administrative expense claim for making a substantial contribution to the estate (the "Request"). ECF 166, at 11–12. The Request is based on certain actions taken by CPD in this chapter 7 case that, CPD alleges, identified assets and assisted the Chapter 7 Trustee in the performance of his duties for the benefit of all creditors. As such, the Court must consider whether Congress intended creditors in a chapter 7 case to be eligible to receive an administrative expense claim on account of substantial contributions to the estate or the case more generally under section 503(b) of the Code.

Section 503(b) authorizes administrative expense claims for substantial contributions by creditors in chapter 9 and chapter 11 cases, but it does not specifically mention creditors in chapter 7 cases. Given the language of section 503(b) of the Code and the role of a trustee in a chapter 7 case, the Court finds that only extraordinary circumstances warrant the award of an administrative expense claim to an individual creditor in a chapter 7 case. The Court has carefully reviewed the record in this case, including the statements of the Chapter 7 Trustee concerning CPD's actions. For the reasons set forth below, the Court concludes that CPD is entitled to a limited administrative expense claim in the amount of $7,987.50 for certain actions by CPD that made a substantial contribution to the above-captioned Debtor's estate before the Chapter 7 Trustee was actively engaged in the case.

## I.     Relevant Background

The Debtor filed this chapter 7 case on July 25, 2017. ECF 1. The Debtor appears to have filed this case as a result of, among other things, various prepetition lawsuits relating to his construction company, Shani Construction ("Shani"). Two creditors who were plaintiffs in two of those prepetition lawsuits have been particularly active in this case. First, CPD obtained a

prepetition state court judgment against the Debtor and Shani in the amount of $971,794.31 as compensatory damages, $350,000.00 as punitive damages, $64,025.00 as liquidated damages, and $74,696.60 for attorney's fees and costs (the "CPD Judgment"). Adv. Pro. 17-00312, ECF 1. Second, Chesapeake Employers Insurance Company ("CEIC") filed a state court lawsuit against the Debtor and Shani, which the parties resolved by a prepetition Settlement Agreement. The Debtor and Shani defaulted under that agreement, however, and CEIC obtained a Confessed Judgment against them in state court in the amount of $138,000.00, plus costs (the "CEIC Judgment"). Adv. Pro. 17-00396, ECF 1.[3]

Shortly after the petition date, CPD filed an adversary proceeding against the Debtor seeking to hold the claims underlying the CPD Judgment nondischargeable in this case under section 523 of the Code. Adv. Pro. 17-00312, ECF 1. CPD also, on August 12, 2017, filed a Motion for Rule 2004 Examination of the Debtor. ECF 18. Both of these filings occurred prior to the Debtor's meeting of creditors under section 341 of the Code and the active engagement of the Chapter 7 Trustee in this case. *See, e.g.*, ECF 8, 36, 51, 53.

Based on the record, it appears that CPD's early actions in this case contributed at least in part to the Debtor disclosing certain assets that allegedly had been transferred prepetition by the Debtor to his spouse or other family members or not otherwise disclosed in the Debtor's bankruptcy documents. The Debtor amended his Schedules of Assets and Liabilities and Statement of Financial Affairs to reflect these omissions. ECF 71, 73, 87, 90, 102. CPD's knowledge of the Debtor's prepetition financial affairs as a result of the state court litigation and CPD's early actions in this case appears to have provided useful information to the Chapter 7 Trustee and to have resulted in asset recoveries for the benefit of the estate.

---

[3] This adversary proceeding and the status of the CEIC Judgment in this case remain pending.

3

As noted in the Court's Order Addressing Sanctions for Civil Contempt (the "Sanctions Order"), CPD continued to aggressively pursue the Debtor through various actions in this chapter 7 case.[4] ECF 196. CPD took these actions despite the engagement of the Chapter 7 Trustee, the consent order deeming CPD's claim nondischargeable in this case, and the passing of the deadline to object to the Debtor's general discharge.[5] Although individual creditors are entitled to protect their interests in any bankruptcy case, the bankruptcy trustee is responsible for collecting and administering the Debtor's assets for the benefit of the estate in a chapter 7 case. 11 U.S.C. §§ 704, 323. Consequently, any request for compensation by a creditor for actions taken in a chapter 7 case must be carefully scrutinized based on the facts of the particular case, the nature of a chapter 7 process, and the language of the Code.[6]

## II.   Analysis

Section 503(a) of the Code allows an entity to request payment of an administrative expense claim.[7] 11 U.S.C. § 503(a). The Code does not define the term "administrative expense," but courts generally focus on when the expense was incurred and its relation to the bankruptcy estate. For example, the United States Court of Appeals for the Fourth Circuit has stated that "an administrative expense has two defining characteristics: (1) the expense and right to payment arise after the filing of bankruptcy, and (2) the consideration supporting the right to payment

---

[4] For example, since the petition date, CPD has filed at least eight different requests for information from the Debtor and various third parties presumably under the guise of Bankruptcy Rule 2004, as the subpoenas and motions have been filed in the main bankruptcy case and not in the context of a contested matter or adversary proceeding. ECF 18, 107, 127, 135, 136, 155, 194, 195.

[5] CPD objected to the Debtor's general discharge in its Complaint filed in Adversary Proceeding No. 17-00312, but that Count of the Complaint was dismissed and the adversary proceeding closed. Adv. Pro. No. 17-00312, ECF 18.

[6] The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(a), and Local Rule 402 of the United States District Court for the District of Maryland. This matter is a "core proceeding" under 28 U.S.C. § 157(b)(2).

[7] Although section 503 speaks only to "administrative expenses," most courts view administrative expenses as a kind of claim in a bankruptcy case. *See, e.g., In re Circuit City Stores, Inc.*, 426 B.R. 560, 568–69 (Bankr. E.D. Va. 2010) ("Administrative expenses appear to be a subset of 'claims.' Throughout the Bankruptcy Code, the term 'claim' is used to refer to administrative expenses.").

provides some benefit to the estate." *CIT Commc'n Fin. Corp. v. Midway Airlines Corp. (In re Midway Airlines Corp.)*, 406 F.3d 229, 237 (4th Cir. 2005) (internal citations omitted).[8] Section 507 of the Code grants a second priority status to administrative expense claims allowed under section 503(b). 11 U.S.C. § 507(a)(2). This priority status, in turn, requires a trustee or debtor in possession to pay allowed administrative expense claims before making any distributions to holders of lower priority claims or general unsecured creditors. 11 U.S.C. § 726(a). As such, if the Court grants the Request, CPD would receive some distributions in this case ahead of other general unsecured creditors.

### A. Administrative Expense Claims Generally

Section 503(b) of the Code provides a non-exclusive list of permissible administrative expense claims.[9] 11 U.S.C. § 503(b). This list identifies nine categories of potential administrative expenses. One such category speaks to efforts by creditors in bankruptcy cases. Specifically, section 503(b)(3) allows administrative expense claims for, among other things, "the actual, necessary expenses … incurred by … (D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title." 11 U.S.C. § 503(b)(3).[10] Section 503(b)(4) also

---

[8] *See also Heathcon Holdings, LLC v. Dunn Indus., LLC (In re Dunn Indus., LLC)*, 320 B.R. 86, 90 (Bankr. D. Md. 2005) ("The term claim is defined as a 'right to payment,' determined 'as of the date of the filing of the petition....' 11 U.S.C. §§ 101(5), 502(b). An administrative expense is one which arises in connection with administration of the bankruptcy estate and, as such, arises after the petition is filed. *Id.* at § 503(b).").

[9] Section 503(b) provides, "After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title, *including*— …." 11 U.S.C. § 503(b) (emphasis added).

[10] Section 503(b)(3) also specifies expenses incurred by "a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor …." 11 U.S.C. § 503(b)(3)(B). This subsection is not applicable to the case before the Court as CPD did not request or obtain Court approval to pursue the Debtor's assets on behalf of the estate. *See, e.g., Sanner v. Poli (In re Poli)*, 298 B.R. 557, 568 (Bankr. E.D. Va. 2003) ("Under § 503(b)(3)(B), a creditor can obtain reimbursement of attorney fees as an administrative expense 'if

5

authorizes the payment of "reasonable compensation for professional services rendered by an attorney" on behalf of a creditor in connection with a claim allowed under section 503(b)(3). 11 U.S.C. § 503(b)(4).

Although section 503(b) is, by its terms, a non-exclusive list, courts take different approaches regarding a creditor's ability to submit an administrative expense claim for making a substantial contribution to a chapter 7 estate. The majority of courts appear to reject any claim for substantial contribution by creditors in a chapter 7 case.[11] These courts generally reason that "'[w]hen a subsection directly addresses the type of administrative expense sought, the restrictions in it cannot be avoided by appealing to the non-exclusive nature of § 503(b).'" *In re Engler*, 500 B.R. 163, 174 (Bankr. M.D. Fla. 2013) (internal citations omitted).

Some courts, however, take a more flexible approach, considering the totality of the circumstances when analyzing any given administrative expense request under section 503. For example, in *In re Connolly North America, LLC*, the United States Court of Appeals for the Sixth Circuit reversed the lower courts' decisions and held that a chapter 7 creditor could seek a substantial contribution claim under section 503 of the Code. 802 F.3d 810 (6th Cir. 2015). The Sixth Circuit explained, "[w]e have noted previously that the Bankruptcy Code itself encourages an expansive reading of § 503(b). The statute explains in § 102(3) that the terms '"includes" and

---

(1) it obtains approval of the Bankruptcy Court to recover property of the estate prior to recovering it and (2) there is a determination that the recovery is for the benefit of the estate.'") (internal citations omitted).

[11] *See In re Fontainebleau Las Vegas Holdings, LLC*, 574 B.R. 895, 903 (Bankr. S.D. Fla. 2017) ("In support of their argument, the Examiner's Professionals rely on *In re Connolly N. Am., LLC*, 802 F.3d 810, 816 (6th Cir. 2015), in which the Sixth Circuit held that a court can allow a substantial contribution administrative expense claim in a Chapter 7 case, notwithstanding the plain language of § 503(b)(3)(D). However, the *Connolly* case is inapposite here. *Connolly* is not binding on this Court and conflicts with the majority view on the issue. *Id.* at 822–23 ('Other circuits and bankruptcy appellate panels—not to mention the vast majority of district and bankruptcy courts—have held expressly that substantial contributions in a Chapter 7 proceeding are not administrative expenses under § 503(b).') (O'Malley, J., dissenting) (citations omitted)."). *See also, e.g., In re United Educ. & Software*, 2005 WL 6960237 (B.A.P. 9th Cir. 2005) ("Section 503(b) has been construed narrowly because administrative claims are paid directly from the bankruptcy estate and reduce the funds available for creditors and other claimants.").

"including" are not limiting[.]' … Consequently, we held that Congress's failure to expressly designate a given expense as allowable under § 503(b) does not mean that it is excluded." *Id.* at 816 (internal citations omitted).[12] The Sixth Circuit also distinguished the case before it from the Supreme Court's decision in *RadlAX Gateway Hotel, LLC v. Amalgamated Bank*, and the general statutory interpretation canon that "the specific governs the general." *Id.* at 818 (discussing *RadLAX*, 566 U.S. 639 (2012)).[13] According to the Sixth Circuit, the section of the Code at issue in *RadLAX* did not involve any variation of the term "include" and Congress could have, but did not, exclude administrative expense claims for creditors in chapter 7 cases.[14] *Connolly*, 802 F.3d at 818.

### B. Substantial Contribution Claims in Chapter 7 Cases

The issue of allowing administrative expenses for substantial contributions in a chapter 7 case is a difficult matter. The chapter 7 process is premised on the appointment of a bankruptcy trustee to administer the estate for the benefit of creditors.[15] *See, e.g.,* 11 U.S.C. §§ 704, 323;

---

[12] *See also, e.g., In re Sharkey*, 2017 WL 5476486, at *6 (E.D. Mich. Nov. 15, 2017) ("On balance, the court held, the statutory text more strongly implies that the subprovisions after "including" in § 503(b)(3)(D) are examples rather than an exhaustive list, and the court cited decisions by courts within various circuits supporting that reading."); *In re Maqsoudi*, 566 B.R. 40, 44 (Bankr. C.D. Cal. 2017) ("Furthermore, concluding that the subsections of § 503(b) are non-exhaustive, but that the subsections of 503(b)(3) are exhaustive, would make the application of the statute to situations outside its plain language untenable.").

[13] In *RadLAX*, the Supreme Court also explained that "[o]f course the general/specific canon is not an absolute rule, but is merely a strong indication of statutory meaning that can be overcome by textual indications that point in the other direction." *RadLAX*, 566 U.S. at 646–47. The Code does separately address its use of the word "include," noting that "'includes' and 'including' are not limiting." 11 U.S.C. § 102(3). *See also Connolly*, 802 F.3d at 816.

[14] *See also In re Maust Transp., Inc.*, 2018 WL 4488712, at *3 (Bankr. W.D. Wash. Apr. 3, 2018) (citing examples where Congress clearly limited a court's discretion to allow an administrative expense claim, including that "the 2005 amendments to § 503, which specifically prohibit certain insider retention bonus administrative claims, make it clear that Congress can and has removed the broad discretion granted to courts in § 503 where it deems the exercise of such discretion improper as to certain specific categories of administrative claims").

[15] *See also, e.g., Rahmi v. Trumble*, 464 B.R. 710, 718 (N.D. W. Va. 2011), *aff'd sub nom. In re Bon-Air P'ship*, 521 F. App'x 131 (4th Cir. 2013) ("The Fourth Circuit Court of Appeals ('Fourth Circuit') stated that this statutory language 'impose[s] on [the trustee] an affirmative duty to reduce the ... property to money as expeditiously as [is] compatible with the interests of [the parties],' thereby requiring a balance between the speed and the interests of the parties. *In re Hutchinson,* 5 F.3d 750, 754 (4th Cir.1993). A Chapter 7 trustee's '"discretion is reviewable by a bankruptcy court ..., but so long as the trustee acts reasonably and in the best interests of the estate, and ... obtains fair value for the property under the circumstances of the case, [the trustee's] choice of method of disposition will be

*SunTrust Bank v. Matson (In re CHN Constr., LLC)*, 531 B.R. 126, 130 (Bankr. E.D. Va. 2015) ("The trustee is a disinterested party who serves in a fiduciary capacity"). Independent actions by creditors during the chapter 7 case potentially could conflict with, duplicate, or undermine the trustee's efforts on behalf of the estate and all creditors. This is very different from the situation in a chapter 9 or chapter 11 case, in which the debtor typically is in control of its property as either a municipal debtor or a debtor in possession. 11 U.S.C. §§ 901, 902(1), 902(5), 904, 1107. A bankruptcy trustee generally is not monitoring the case and administering property under those chapters.[16] As a result, independent monitoring and actions by creditors in a chapter 9 or chapter 11 case could potentially provide a very meaningful benefit to the case and all creditors.

The Court finds the reasoning of the Sixth Circuit in *Connolly* persuasive and consistent with the general structure of the Code.[17] As the Sixth Circuit observed, "[i]t makes good sense that in providing the[] examples [in section 503(b)], Congress would expressly mention Chapters 9 and 11 in the context of creditor activity making a 'substantial contribution,' but not

---

respected.'" *In re Merry–Go–Round Enterprises, Inc.,* 180 F.3d 149, 162 (4th Cir.1999) (quoting *In re Frezzo,* 217 B.R. 985, 989 (Bankr.E.D.Pa.1998) (citations omitted).").

[16] A trustee may be appointed for cause in a chapter 11 case. 11 U.S.C. § 1104. There is no similar provision in chapter 9. 11 U.S.C. § 901.

[17] The Fourth Circuit does not appear to have addressed this issue directly, but it has noted the non-exclusive nature of section 503(b) of the Code. *See Forsyth Cty. & City of Winston-Salem Tax Collector v. Burns*, 891 F.2d 286 (4th Cir. 1989) (table case) ("Administrative expenses are not exhaustively defined in the Code, but they do include 'any tax incurred by the estate, except a tax of a kind specified in section 507(a)(7) of this title....' 11 U.S.C. § 503(b)(1)(B)(i)."). The Fourth Circuit also has discussed section 503(b)(3)(D) generally in the chapter 11 context, including a chapter 11 case subsequently converted to a case under chapter 7, but those decisions are not on point. *See, e.g., In re Shangra-La, Inc.*, 167 F.3d 843, 847 (4th Cir. 1999) ("Three Sisters also claims that the fees and expenses are recoverable under § 503 of the Bankruptcy Code as an administrative expense. Because Three Sisters cannot point to a tangible benefit to Shangra-La's estate, we summarily reject the argument as without merit. *See In re DP Partners, Ltd.,* 106 F.3d 667, 673 (5th Cir.), *cert. denied,* 522 U.S. 815, 118 S.Ct. 63, 139 L.Ed.2d 26 (1997)."). The Court acknowledges that at least one court in this district has noted a limitation on the application of section 503(b)(3)(D) in the chapter 13 context. *See In re Harvey*, 2006 WL 4481990, at *2 (Bankr. D. Md. Nov. 22, 2006) (stating that section 503(b)(3)(D) "is limited to cases under Chapter 9 or 11 of this Title, and this case never was a case under either chapter"). The *Harvey* decision does not address the statutory interpretation issue confronted by the Sixth Circuit in *Connolly* or the general non-exclusive nature of section 503(b) of the Code, both of which inform this Court's decision.

Chapter 7. In both Chapters 9 and 11, as a matter of course, a creditor will spend its own time and resources to benefit the estate; however, in all but the most atypical Chapter 7 case (such as the instant case), the U.S. trustee fulfills this role." *Connolly*, 802 F.3d at 817. Interpreting section 503(b) as endorsing substantial contribution claims in chapters 9 and 11, but not necessarily excluding such claims in other chapters, aligns with the language and structure of the statute. It provides helpful guidance to courts in assessing the most common kinds of administrative expenses while enabling courts to provide similar compensation in those rare instances deserving of consideration.

That said, the Court is mindful of potential hazards in allowing administrative expense claims for creditors under a substantial contribution theory in chapter 7 cases. A bankruptcy filing is intended to, among other things, stop the race to the courthouse by individual creditors and provide a debtor with an opportunity to catch her financial breath. *See, e.g., In re Schwartz-Tallard*, 803 F.3d 1095, 1100 (9th Cir. 2015); *see also In re Pinkney*, 2002 WL 433151, at *3 (Bankr. N.D.N.C. Mar. 8, 2002). That breathing spell benefits not only the debtor but also the debtor's creditors by preventing the debtor's assets from being captured by particular creditors or drained by multi-faceted creditor litigation. *See, e.g., Schwartz-Tallard*, 803 F.3d at 1100. As noted above, independent creditor actions also could impede the trustee's efforts on behalf of all creditors.

Based on the foregoing, the Court finds a general presumption against awarding substantial contribution claims to creditors in a chapter 7 case.[18] The Court further finds, however, that a creditor in a chapter 7 case should have the opportunity to rebut this

---

[18] The Court notes that this approach aligns with how courts generally view distributions in a bankruptcy case. *See, e.g., Ford Motor Credit Co. v. Dobbins*, 35 F.3d 860, 865 (4th Cir.1994) ("The presumption in bankruptcy cases is that the debtor's limited resources will be equally distributed among the creditors.") (internal citations omitted).

presumption. The creditor bears the burden of proof on any request for an administrative expense claim under section 503(b) of the Code. *See, e.g.*, *Tidewater Fin. Co. v. Henson*, 272 B.R. 135, 138 (D. Md. 2001), *aff'd sub nom. In re Henson*, 57 F. App'x 136 (4th Cir. 2003) ("In resolving § 503(b) requests, a court must observe the modifiers 'actual' and 'necessary' with scrupulous care, and the creditor bears the burden of proving his claim. *In re Merry–Go–Round Enterprises, Inc.,* 180 F.3d 149, 157 (4th Cir.1999)."). In a case like the one before the Court, the creditor must establish facts supporting the request, including that the creditor's conduct was warranted under the particular circumstances of the case. In other words, the creditor must demonstrate that its actions were not intended to thwart or impede the chapter 7 process, but that the actions were necessary under the circumstances and provided a substantial benefit to the estate.

### C.  CPD's Request for a Substantial Contribution Claim

CPD argues that its discovery and other actions against the Debtor since the petition date have made a substantial contribution to the estate. CPD states that, "without in any way intending to slight the efforts of the Trustee, it was the efforts of CPDI that lead to the recovery of all of the assets which the Estate has recovered, and the further enhancement of the Estate by insisting that the list price on the Debtor's residence be higher than recommended by the realtor retained by the Estate." Mot. ¶ 54, ECF 166. Although the Court does not agree with this statement in its entirety, the Court does believe that certain of CPD's early actions provided a meaningful benefit to the estate.

The Court notes that creditors in a chapter 7 case may cooperate with the bankruptcy trustee and provide the trustee with information that enhances the value of the estate. The structure of the chapter 7 process—where the trustee is charged with collecting and distributing assets and those assets represent the only source of recovery for most general unsecured

creditors—provides an appropriate incentive, in most cases, for general unsecured creditors to cooperate with the trustee. The Court recognizes, however, that exceptions to this incentive structure may exist, particularly where the creditor is secured or not subject to the bankruptcy discharge. The Court thus proceeds cautiously in discerning whether, and the extent to which, CPD may be entitled to an administrative expense claim. Indeed, the Court does not intend to upset the general distribution scheme, and related incentives, built into the Code by Congress.

In light of the foregoing, the Court must carefully analyze CPD's conduct, both in terms of potential benefit to the estate and the purpose and timing of such conduct. For example, CPD's decision to share its valuation assessment of the Debtor's residence occurred after the Chapter 7 Trustee secured the deed to the property and had decided to list the property for sale. Given that such sale would limit any creditor's recovery from the property, the Code already provided proper incentive for CPD to cooperate with the Trustee to maximize the property's value. To determine otherwise could create an incentive structure in which creditors withheld information from the Trustee unless rewarded with an administrative expense claim.

Nevertheless, the Court views CPD's conduct prior to the active engagement of the Chapter 7 Trustee differently.[19] As acknowledged by the Trustee, that conduct streamlined the Trustee's process for obtaining certain kinds of information and recovering at least four vehicles

---

[19] The Court notes that CPD's activity in this case, including its pursuit of information through the Bankruptcy Rule 2004 process, continued after the active engagement of the Chapter 7 Trustee. The Court addresses this activity in the Sanctions Order. As the Court observed therein, "Although the Court understands CPD's curiosity and interests in the Debtor's assets, the Court is not aware of any action, claim, or litigation it could bring in this chapter 7 case at this point given the resolution of CPD's nondischargeability action, the fact that the deadline to object to the Debtor's discharge has passed, and the role of the Chapter 7 Trustee in this case." Sanctions Order, ECF 196, at 11 (internal citations omitted). *See also, e.g., In re Braxton*, 516 B.R. 787, 794 (E.D.N.C. 2014) ("The purpose of a Rule 2004 examination is to 'show the condition of the estate and to enable the court to discover its extent and whereabouts, and to come into possession of it, that the rights of the creditor may be preserved.'") (internal citations omitted); *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 626–27 (Bankr. D. Del. 2016) ("Further, Rule 2004 is not available to creditors seeking 'to use this section to deal with their special problems.'") (internal citations omitted). This observation highlights the Court's concern with duplication of, or interference with, the efforts of a chapter 7 trustee.

for the benefit of the estate.[20] CPD's prepetition litigation and general familiarity with the Debtor allowed it to move more quickly than the Chapter 7 Trustee initially, thereby creating efficiencies for the Trustee and the estate. The Trustee's swift recovery and sale of the vehicles underscore the value provided to the estate—it is tangible and not just theoretical value. *See, e.g.,* ECF 125. CPD's actions in this limited context were actual and necessary expenses and provided a substantial benefit to the chapter 7 estate. 11 U.S.C. § 503(b).

### III. Conclusion

The Court concludes that CPD's actions early in the case—i.e., before the closing of the Debtor's final meeting of creditors on or about October 27, 2017, and the active engagement of the Chapter 7 Trustee—provided a substantial benefit to the Debtor's estate and case more generally.[21] The Court thus will grant CPD an allowed administrative expense claim in the amount of $7,987.50 under section 503(b) of the Code. This amount represents the attorney's fees incurred by CPD in this case from August 10, 2017, through and including October 18, 2017. Mot. Ex. 1 at 15, ECF 166. The Court further notes that the Chapter 7 Trustee did not oppose CPD's Request and the amount awarded herein generally accords with that suggested by CEIC in its opposition papers. ECF 177; Record Aug. 21, 2018 Hrg. at 10:37:50. The Court also underscores the unique circumstances of this case and its position that, for the many reasons set forth above, a substantial contribution claim for a creditor in a chapter 7 case should be the rare

---

[20] *See, e.g.,* Record Aug. 21, 2018 Hrg. at 10:37:50 ("There's no question that's of value and that's obvious when someone has engaged in litigation with a debtor, and then that debtor files. That creditor is invaluable and what Mr. Baer said to me about this was, 'we so often wish that the creditors would take an active role,' and so how can we object to the diligence … How can the Trustee take issue with his contention that he added value when he definitively directed us, into, at least what to look at first?"). *See also* ECF 125.

[21] The Debtor's original meeting of creditors was held on August 21, 2017. ECF 8. The meeting then was continued and renoticed several times. *See, e.g.*, ECF 36, 51. It appears from the docket that the Chapter 7 Trustee concluded the meeting of creditors in late October 2017. ECF 53.

exception rather than the rule. The Court will enter a separate Order consistent with this Memorandum Opinion.

**Copies to:**
Debtor
Debtor's Counsel
College Park Den, Inc.'s Counsel
Chesapeake Employers Insurance Company's Counsel
Chapter 7 Trustee
Chapter 7 Trustee's Counsel

**END OF MEMORANDUM OPINION**